**BROOKSIDE ASSOCIATES, a California limited partnership; Douglas F. McRae, and Chad R. Turner, Plaintiffs–Appellants,**

v.

**Michael RIFKIN, husband, and Anita Rifkin, wife; Frederick Weaver, husband, and Denise Weaver, wife; Resolution Trust Corporation, as receiver for Southwest Savings and Loan Association, Defendants–Appellees.**

No. 93–15048.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 17, 1994.

Withdrawn from Submission April 20, 1994.

Resubmitted Oct. 26, 1994.

Decided Feb. 21, 1995.

Burton v. McCullough, Los Angeles, CA, for plaintiffs-appellants.

Michael W. Wright, McCabe, O'Donnell & Wright, Phoenix, AZ and Jeffrey Ehrlich, Resolution Trust Corp., Washington, DC, for defendants-appellees.

Before: D.W. NELSON, BOOCHEVER, and BEEZER, Circuit Judges.

BOOCHEVER, Circuit Judge:

Brookside Associates ("Brookside"), a limited partnership, and its two general partners filed suit for fraud against the Resolution Trust Corporation ("RTC"), as receiver for Southwest Savings and Loan Association ("Southwest"), and two of Southwest's former officers, seeking damages for misrepresentations made in connection with Southwest's sale of condominiums to Brookside. The RTC and the individual defendants moved for summary judgment under the doctrine of *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and under 12 U.S.C. § 1823(e). The district court granted the RTC's motion, and Brookside appeals. We affirm in part and reverse in part.

## FACTS

For the purposes of reviewing the summary judgment, we summarize the facts as follows.

Brookside is a California limited partnership formed to acquire, hold, and sell 28 units in the Brookside Condominiums in Mesa, Arizona. In June 1986, Brookside bought the 28 condominium units from Southwest, in reliance on representations made by Anita Rifkin and Frederick Weaver, both senior vice presidents of Southwest.

Three months before the sale, in March 1986, Rifkin wrote a letter on behalf of Southwest to a real estate agent, who then delivered the letter to Brookside's general partners with Rifkin's consent. The letter stated that "a recent appraisal review indicates a retail value of $1.78 million" for the 28 units, but quoted a sales price of $1,374,500 for the units. At a meeting in April 1986 at which Weaver also was present, Rifkin reassured Brookside that the appraisal was accurate. When Brookside asked to see the $1,780,000 appraisal review and supporting documentation, Rifkin stated that the information was confidential, and could not be shared with others outside Southwest.

The $1,780,000 appraisal figure was false. The condominiums actually had been appraised at $1,374,500. Rifkin gave Brookside the higher appraisal figure, and Weaver assented in the misrepresentation, to mislead Brookside into buying the condominiums.

In May 1986, a month after the meeting, Rifkin and Weaver obtained another appraisal, which again valued the condominiums at $1,374,500. They concealed this valuation by waiving the appraisal fee, invoking a Southwest policy not to reveal the underwriting appraisal when the fee was waived. Rifkin and Weaver also concealed two additional low appraisals, one valuing the 28 units at $1,305,600, and the other valuing 36 units at $1,515,000 for sale to a single purchaser such as Brookside.

In June 1986, Brookside bought the 28 condominiums in reliance on the false appraisal value. Southwest "took back paper" in the form of a nonrecourse note and first trust deed in favor of Southwest. Brookside eventually defaulted on its loan from Southwest, and Southwest foreclosed on the condominiums in March 1989. The property was sold at public auction to Southwest, whose credit bid for the balance of the obligation owed to it was the highest bid on the property.

Six months later, in September 1989, the RTC was appointed receiver for Southwest and succeeded to ownership of all Southwest's assets, including the condominiums. The condominiums were then transferred with the bulk of Southwest's assets in a purchase and assumption transaction to a new savings and loan association, Southwest Savings & Loan Association, F.A. ("New Southwest"), with the RTC as conservator. New Southwest sold the condominiums to a third party in August 1990.

In March 1989, before the RTC was appointed receiver, Brookside filed suit in state court against Southwest. The state court action was removed to federal court and eventually was dismissed without prejudice. Brookside also filed an unsuccessful claim with the RTC. In June 1992, Brookside filed the complaint in this action, alleging that Rifkin and Weaver's actions regarding the false appraisals constituted fraud, fraudulent concealment, and negligent misrepresentation and concealment. Brookside asked for compensatory damages in the amount of the downpayment, improvements, costs, insurance, and principal and interest paid by Brookside on the condominiums, as well as punitive damages.

Rather than answer the complaint, the RTC, Rifkin, and Weaver moved for summary judgment, admitting all the allegations of the complaint for the purposes of the motion. The district judge heard argument and granted the motion, based on the *D'Oench, Duhme* doctrine and 12 U.S.C. § 1823(e). Brookside appeals.

## DISCUSSION

We review the district court's grant of summary judgment de novo, determining whether, viewing the evidence and the inferences in the light most favorable to Brookside, the RTC is entitled to prevail as a

matter of law. *Falk v. Mt. Whitney Sav. & Loan Ass'n,* 5 F.3d 347, 350 (9th Cir.1993) (as amended); *Newton v. Uniwest Fin. Corp.,* 967 F.2d 340, 343 (9th Cir.1992).

### A. *D'Oench, Duhme and § 1823(e)*

The RTC argues that Brookside's suit is barred by the *D'Oench, Duhme* estoppel doctrine, and by 12 U.S.C. § 1823(e).

In *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), a securities dealer sold bonds to a bank. The issuer of the bonds later defaulted on the payments. To allow the bank not to carry any past-due bonds on its books, the securities dealer executed promissory notes to the bank. The receipts for the notes, signed by the bank's president, stated that the notes would not be called for payment and that interest paid would be refunded. In a purchase and assumption transaction, the Federal Deposit Insurance Company ("FDIC") later acquired from the bank a $5000 note, executed by the securities dealer in renewal of the original notes. When the FDIC demanded payment on the $5000 note, the maker claimed that he owed nothing because of the bank's agreement not to call the original notes. The FDIC had been unaware of the receipts until after it demanded payment. *Id.* at 454, 62 S.Ct. at 678.

Citing "a federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [the FDIC] insures or to which it makes loans," *id.* at 457, 62 S.Ct. at 679, the Supreme Court held that the undisclosed agreement not to demand payment would not be allowed as a defense. *Id.* at 461, 62 S.Ct. at 681. "If the secret agreement were allowed as a defense in this case the maker of the note would be enabled to defeat the purpose of the statute [creating the FDIC] by taking advantage of an undisclosed and fraudulent agreement ... which the maker of the note made possible." *Id.* The *D'Oench, Duhme* doctrine thus is a principle of equitable estoppel that permits bank examiners to rely on the records of a bank in evaluating the bank's financial condition, by protecting the bank authorities from suits founded on undisclosed conditions or deceptive documents. *See FDIC v. Zook Bros. Constr. Co.,* 973 F.2d 1448, 1450–51 (9th Cir. 1992); *Federal Sav. & Loan Ins. Corp. v. Gemini Management,* 921 F.2d 241, 245 (9th Cir.1990).

Congress codified the policy embodied in the *D'Oench, Duhme* holding in 12 U.S.C. § 1823(e), which "'makes the common law principle both more encompassing and more precise.'" *RTC v. Midwest Fed. Sav. Bank,* 36 F.3d 785, 795 (9th Cir.1994) (as amended) (quoting *FDIC v. O'Neil,* 809 F.2d 350, 353 (7th Cir.1987)). Section 1823(e) provides:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it under this section ... either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement—
>
> (1) is in writing,
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> (4) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (Supp. V 1994). Congress extended the statute's protections to the RTC in 1989, before the RTC acquired Southwest. 12 U.S.C. § 1441a(b)(4)(A) (Supp. V 1994).

The Supreme Court most recently discussed the *D'Oench, Duhme* doctrine and § 1823(e) in *Langley v. FDIC,* 484 U.S. 86, 108 S.Ct. 396, 98 L.Ed.2d 340 (1987). The Langleys executed notes to a bank in consideration for a loan to purchase real estate. When the bank filed suit for principal and interest after the Langleys missed a payment, they alleged as a defense that the notes were procured by the bank's misrepre-

sentations regarding the size and other conditions of the property. The Langleys also filed their own suit, with the alleged misrepresentations as one of the grounds of the complaint. None of the representations appeared in the bank's records. The FDIC subsequently was appointed receiver and substituted as plaintiff in the suit. *Id.* at 88–89, 108 S.Ct. at 399–400.

The Supreme Court granted certiorari on the issue whether fraud in the inducement was barred as a defense against the FDIC under § 1823(e), "even when the fraud did not take the form of an express promise." *Id.* at 90, 108 S.Ct. at 401. Analyzing the meaning of "secret agreement" in *D'Oench, Duhme,* the Court held that unrecorded conditions on a note that consisted of the truthfulness of a warranted fact (the bank's representations as to the size and other conditions of the property) were an arrangement likely to mislead the banking authorities, and thus could not be asserted against the FDIC. *Id.* at 92–93, 108 S.Ct. at 401–02.

*Langley's* analysis expands *D'Oench, Duhme* estoppel and the statutory bar to suit of § 1823(e) to situations such as the one in this case. *See Century Centre Partners Ltd. v. FDIC,* 969 F.2d 835, 838 (9th Cir.1992) (as amended) (misrepresentations inducing the execution of a note constitute *D'Oench, Duhme* "agreement"), *cert. denied,* —— U.S. ——, 113 S.Ct. 2997, 125 L.Ed.2d 690 (1993). Brookside's allegations echo those of the debtors in *Langley.* Brookside alleges that its purchase of the condominiums, which involved the making of the note and the deed of trust, was procured by the bank officers' misrepresentations about the value of the condominiums. The RTC answers that those misrepresentations constitute the kind of secret agreement that the *D'Oench, Duhme* doctrine and § 1823(e) decline to enforce.[1]

Despite the considerable surface similarity to *Langley,* however, there is a distinction between the facts in that case and the facts in issue here. In *Langley,* the debtors first asserted the misrepresentations as a defense to avoid their obligation on the note. The Supreme Court held that the misrepresentations constituted a secret agreement under the statute and *D'Oench, Duhme,* because the debtors' claim that the note was obtained by fraudulent misrepresentations as to the value of the real estate contradicted what the bank records indicated when the bank's assets, which included the note, were transferred to the FDIC as receiver. The Court reasoned that debtors who signed a note subject to "unwritten and unrecorded" conditions lent themselves to a scheme likely to mislead the banking authorities, who would have relied on the bank's records in taking the note at its full face value. *Id.* at 93, 108 S.Ct. at 402. The Court concluded that § 1823(e) barred the Langleys' defense.

In this case, however, unlike the situation in *Langley,* no enforceable note existed when the RTC took over Southwest in September of 1989. The note and deed of trust were no longer on Southwest's books, as they were extinguished before the RTC acquired the bank's assets. Instead, Southwest owned the condominiums themselves, acquired at the foreclosure sale six months earlier. Brookside argues that because the note had been extinguished before the RTC took Southwest over as receiver, and because Brookside's suit does not challenge the RTC's right, title, or interest in the condominiums, no related asset existed when the RTC took over, and so neither the common law nor the statute bars its suit.

Brookside's argument might have some force where § 1823(e) is concerned. In *Mur-*

---

1. Nothing in the briefs or record indicates that the fraudulent representation about the appraisal was in the bank's records. Brookside thus does not argue that there was no "secret agreement."

Further, it is immaterial that the RTC knew of Brookside's lawsuit when it acquired Southwest as its receiver. *See Langley,* 484 U.S. at 94–95, 108 S.Ct. at 402–03 (although lawsuit alleging secret agreement was filed before FDIC acquired the bank, FDIC's knowledge of the unrecorded condition is irrelevant to harm FDIC suffered at

the time it acquired the note); *Falk,* 5 F.3d at 349, 350–51 (applying *D'Oench, Duhme* and § 1823(e) analysis when lawsuit was filed before FDIC acquired bank); *E.I. du Pont de Nemours v. FDIC,* 32 F.3d 592, 594–95 (D.C.Cir.1994) (same); *In re Geri Zahn, Inc.,* 25 F.3d 1539, 1544 (11th Cir.1994) (applying *D'Oench, Duhme* to bar claim when lawsuit was filed before bank went into receivership); *Castleglen, Inc. v. RTC,* 984 F.2d 1571, 1574, 1579 (10th Cir.1993) (same).

*phy v. FDIC*, 38 F.3d 1490, 1500 (9th Cir. 1994), an en banc panel of this court found that the reference in § 1823(e) to an "agreement which tends to diminish or defeat the [banking authority's] right title or interest ... *in any asset* acquired by it" (emphasis added) limits the statute's application to an agreement affecting the federal banking authority's interest in an asset of the bank. *Murphy* concluded that § 1823(e) did not bar the enforcement of letters of credit that did not meet the statute's recording requirements, because a letter of credit was not an asset of the bank, but a liability. *Id.* at 1500–01. If *Murphy* can be extended outside the context of letters of credit or other liabilities of the bank, to establish that § 1823(e) applies to bar suit only when the alleged secret agreement affects the value of a specific asset of the bank acquired by the banking authority, then the statute does not bar Brookside's suit. · *See John v. RTC*, 39 F.3d 773, 776 (7th Cir.1994) ("Section 1823(e) requires an identifiable 'asset' which is acquired by the bank and then transferred to the regulatory agency, and to which the unenforceable agreements must relate."); *E.I. du Pont de Nemours & Co. v. FDIC*, 32 F.3d 592, 597 (D.C.Cir.1994) '(§ 1823(e) contemplates secret agreements diminishing the FDIC's interest in "an asset"); *FDIC v. Bracero & Rivera, Inc.*, 895 F.2d 824, 830 (1st Cir.1990) (note discharged by acts independent of alleged secret agreement (payment and cancellation of underlying debt) before FDIC obtained it, is not an asset, so § 1823(e) does not apply); *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1242–43, 1246 (6th Cir.1989) (deed of trust securing note that was paid in full, independently of any secret agreement, before FDIC acquired

bank is presumed extinguished even absent final written release; FDIC thus acquired no asset and § 1823(e) did not bar suit for declaratory relief and penalties for failure to release).

■ We need not decide, however, whether to extend *Murphy* out of the context of letters of credit to require a specific asset before the statutory bar to suit may be invoked. We conclude instead that the *D'Oench, Duhme* doctrine bars Brookside's suit against the RTC. *D'Oench, Duhme* expresses a federal policy to protect the RTC from misrepresentations concerning the assets of insured banks. When a debtor asserts a "secret agreement" not in the records of the bank, whether to avoid enforcement of a note or in a suit such as this one based on fraud in the inducement of an obligation, the *D'Oench, Duhme* policy favors the interests of bank examiners, as well as the agency that insures the bank, over debtors, who can protect themselves against harm by making sure all of the terms of their agreements are in writing. *See Century Centre*, 969 F.2d at 839; *In re NBW Commercial Paper Litig.*, 826 F.Supp. 1448, 1462 (D.D.C.1992) (*D'Oench, Duhme* "places the risk on borrowers if they do not get all of the terms of their agreements in writing.... [The question is,] could the party have taken reasonable steps to protect themselves through some form of written agreement?").

This is the same policy underlying § 1823(e). While the statute's precise reference to an asset acquired by the RTC may limit its applicability to a secret agreement implicating the value of an asset of the bank, *see Murphy*, 38 F.3d at 1500, we decline to so limit the common-law doctrine.[2] Viewed in

2. *Murphy* did not address whether *D'Oench, Duhme* required a specific asset, finding instead that the application of the doctrine was barred under *FDIC v. Meo*, 505 F.2d 790 (9th Cir.1974), because the jury found that Murphy, as a creditor of the bank, had not lent himself in any way to the scheme that misled the banking authorities. *Murphy*, 38 F.3d at 1498, 1500. The *Meo* exception does not apply here, because even if Brookside acted in good faith, by signing the note subject to an unrecorded agreement, Brookside lent itself to an arrangement likely to mislead the RTC. *See id.* at 1499.

The parties' arguments assume that *D'Oench, Duhme* and § 1823(e) are coextensive in their reach, but they do not argue that the statute preempts the common-law doctrine. We therefore do not address the issue of preemption. *See Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 51 (1st Cir.1991) (refusing to consider argument that § 1823(e) preempted *D'Oench, Duhme*, because argument was not raised in district court). We note that at least one district court has concluded that the statute does not preempt the common-law doctrine. *See In re NBW Commercial Paper Litig.*, 826 F.Supp. 1448, 1460 (D.D.C.1992).

the light of the policies underlying *D'Oench, Duhme,* the unusual posture of this lawsuit— the fact that the note had been satisfied before the lawsuit was filed—should not exempt it from the reach of the common-law doctrine. If the note and deed of trust had still been on the bank's books when the RTC took over, the note would qualify as a specific asset of the bank whose value was affected by the alleged secret agreement. Under those circumstances, Brookside's suit would certainly be barred under both the statute and the common law. Why should it make any difference for *D'Oench, Duhme* analysis that Brookside filed this suit after the condominiums were repossessed?

Allowing such a distinction to strip the banking authority of *D'Oench, Duhme* protection would give debtors a message: If you relied on unrecorded representations when you borrowed from the bank, wait until your note is extinguished—or extinguish it yourself by paying it off—before you file suit. It does not make sense, in the light of *D'Oench, Duhme* policy, to allow the doctrine's applicability to hinge on a procedural technicality easily manipulable by debtors. *See Hall v. FDIC,* 920 F.2d 334, 339 (6th Cir.1990) (if the debtor, seeking to avoid the bar of *D'Oench, Duhme,* quickly pays off a loan before FDIC files suit so that FDIC will no longer have an interest in an asset, *D'Oench, Duhme* should still apply to bar suit), *cert. denied,* 501 U.S. 1231, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991).

■ Brookside's allegations describe just the sort of secret agreement in relation to a loan that *Langley* found violated the public policy behind the statute and the *D'Oench, Duhme* doctrine. It should not make a difference, in deciding whether to apply *D'Oench, Duhme* equitable estoppel, that the note was not in the bank's assets at the moment the RTC took over. The failure to record the appraisal condition for executing the note prevented bank examiners from detecting the unrecorded agreement, and deprived the bank's board or loan committee of the opportunity to make a prudent evaluation of whether to approve the loan. *Langley,*

484 U.S. at 95, 108 S.Ct. at 403. This is consistent with the general rule that the bar to suit applies even when the banking authority knew of the secret agreement before it took the bank over (because, for example, the defense based on the secret agreement was raised, or the lawsuit alleging the secret agreement had been filed, before the bank failed, as in *Langley* ). "The proper focus under *D'Oench* is whether the agreement, *at the time it was entered into,* would tend to mislead the public authority." *Timberland Design, Inc., v. First Serv. Bank for Sav.,* 932 F.2d 46, 50 (1st Cir.1991) (emphasis added).

■ Because *D'Oench, Duhme,* unrestricted by the language of the statute requiring an asset, "is nothing more than the policies which created it," *NBW Commercial Paper,* 826 F.Supp. at 1461, we hold that the common-law doctrine applies to bar suit even when the RTC does not acquire a specific asset whose value is affected by the alleged secret agreement.

Our decision is consistent with other appellate cases holding that banking authorities were entitled to invoke the protection of *D'Oench, Duhme* estoppel against suit based on a secret agreement, even when the federal banking authority did not rely on any specific asset when it took over a bank. As the Eleventh Circuit stated:

> Appellant's primary argument on appeal is that the *D'Oench* doctrine does not apply to bar the instant claim because the "secret agreement" upon which appellant relies relates to a liability of the bank rather than to a specific asset of the bank which has been acquired by the FDIC. We can discern nothing in the purpose of the *D'Oench* doctrine which would support appellant's proposed limitation of the doctrine. Moreover, every circuit court of appeals which has expressly addressed this argument has rejected it.

*OPS Shopping Center, Inc. v. FDIC,* 992 F.2d 306, 309 (11th Cir.1993) (footnote omitted).[3]

---

3. *OPS Shopping Center* cites *Jackson v. FDIC,* 981 F.2d 730, 735 (5th Cir.1992) (no specific asset required); *North Ark. Medical Ctr. v. Barrett,* 962 F.2d 780, 788–89 (8th Cir.1992) (*D'Oench,*

Nor does this case involve what other circuits have called a free-standing tort claim, which may be maintained against the federal banking authority even though the claim may not be revealed by examination of the bank's records. *See E.I. du Pont du Nemours & Co. v. FDIC*, 32 F.3d 592, 599 (D.C.Cir.1994); *Vernon v. FDIC*, 981 F.2d 1230, 1233–34 (11th Cir.1993). A free-standing tort claim, such as a slip and fall, does not relate to ordinary banking transactions, and so will not usually be recorded in the documents inspected by bank examiners. *See Motorcity of Jacksonville, Ltd. v. Southeast Bank N.A.*, 39 F.3d 292, 298 (11th Cir. 1994) (free-standing tort is one not related to matters normally reflected in the records of regular banking transactions). In contrast, Brookside's claim relates directly to one of the most regular of banking transactions: the making of a loan for the purchase of real estate. Had Brookside insisted that its reliance on the false appraisal be made a part of the loan-sale documents, the discrepancy between the fraudulent appraisal value and the actual appraisals would have been subject to scrutiny by bank board members and bank examiners. It is highly unlikely that under those circumstances the fraudulent scheme could have been accomplished, or that it would not have been discovered before the RTC acquired the assets of the bank.

Under these circumstances, there is a choice as to who must bear the loss, the public fisc or Brookside. Because the latter could have protected itself by insisting that the "secret agreement"—the false appraisal—be incorporated in the loan documenta-tion, we hold that *D'Oench, Duhme*, bars Brookside's lawsuit. As Judge Lamberth states in his scholarly opinion in *NBW Commercial Paper*:

> *D'Oench* determines, as between two "innocents" (the FDIC and the "wronged" bank customer) who should bear the cost of the failed bank's wrongs. If the customer bears the slightest blame—by failing to protect himself by getting an agreement in writing, then the scale tips in favor of the FDIC and *D'Oench* bars the claim or defense.

*NBW Commercial Paper*, 826 F.Supp. at 1467.

### B. *Claims for fraudulent and negligent concealment*

Brookside argues that its claims for fraudulent and negligent concealment are not barred by *D'Oench, Duhme* because the common-law doctrine does not bar claims for concealment or omission rather than affirmative misrepresentation. We join all the courts of appeal that have rejected this argument. *See RTC v. Ehrenhaus*, 34 F.3d 441, 442 (7th Cir.1994); *McCullough v. FDIC*, 987 F.2d 870, 873 (1st Cir.1993); *FDIC v. Bell*, 892 F.2d 64, 66 (10th Cir.1989), *cert. dismissed*, 496 U.S. 913, 110 S.Ct. 2607, 110 L.Ed.2d 286 (1990). Brookside cannot avoid *D'Oench, Duhme* estoppel by recasting the bank officers' active misrepresentation that the appraisal value was $1.78 million as an omission of the fact that the actual appraisals were lower. That logic would reward artful

---

*Duhme* applies to obligations owed by bank as well as to loans owed to it); *Timberland Design, Inc. v. First Serv. Bank for Sav.*, 932 F.2d 46, 49–50 (1st Cir.1991) (alleged oral agreement to lend money in the future barred by *D'Oench, Duhme*); *Hall v. FDIC*, 920 F.2d 334, 339 (6th Cir.1990) (*D'Oench, Duhme* doctrine protects the FDIC even where the FDIC does not have "an interest in an asset"), *cert. denied*, 501 U.S. 1231, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991); *Bowen v. FDIC*, 915 F.2d 1013, 1016 (5th Cir.1990) ("agreement need not implicate a specific obligation, such as a note or other asset held by the FDIC" for *D'Oench* to apply); *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F.2d 750, 753 (5th Cir.) (rejecting requirement of specific asset), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *First State*

*Bank v. City and County Bank*, 872 F.2d 707 (6th Cir.1989) (*D'Oench, Duhme* denies enforcement of agreements increasing a bank's liabilities); *see also NBW Commercial Paper*, 826 F.Supp. at 1466 (*D'Oench, Duhme* is not limited by "asset" requirement).

We have held that § 1823(e) and *D'Oench, Duhme* bar a debtor from relying on documents not in the bank's records to show that no asset existed when the banking authority took over the bank (i.e., when the bank's official records showed that the asset still existed). *FDIC v. Zook Bros. Constr. Co.*, 973 F.2d 1448, 1453 (9th Cir. 1992). This issue is not presented here, as neither party argues that Brookside's note and deed of trust remained on the bank's books after foreclosure.

pleading and thwart the *D'Oench, Duhme* policy, as nearly every fraudulent misstatement can also be characterized as a deceitful concealment of the true state of affairs. *See NBW Commercial Paper*, 826 F.Supp. at 1462–63.

### C. The individual defendants

▮ The district court granted summary judgment to all the defendants, including Rifkin and Weaver, the bank's officers. The court apparently believed that because Rifkin and Weaver had signed indemnity agreements with the bank, allowing claims against them would allow Brookside to make an end run around the bar to suit of *D'Oench, Duhme* and § 1823(e). The RTC argues that because the RTC would have to indemnify Rifkin and Weaver, allowing claims to proceed against them would frustrate the policy holding the RTC exempt from suit for secret agreements.

▮ As a matter of equity, we see no policy reason to extend *D'Oench, Duhme* to bar a suit against bank officials in their individual capacities, at least insofar as the public funds administered by the federal banking authority would not be affected. The Seventh Circuit has held in dicta that individual bank officers are not shielded from liability by the *D'Oench, Duhme* doctrine. "Collateral agreements ... may be enforced against the persons who made them, but not against the FDIC." *FDIC v. State Bank of Virden*, 893 F.2d 139, 143 (7th Cir.1990). Plaintiffs are entitled to reach individual wrongdoers, even if their lawsuit against the federal banking authority is barred by *D'Oench, Duhme*. "[P]recluding this action [under *D'Oench, Duhme*] does not deprive the plaintiffs of protection under the federal securities laws. They may sue the individuals who actually defrauded them." *Kilpatrick v. Riddle*, 907 F.2d 1523, 1529 (5th Cir.1990), *cert. denied*, 498 U.S. 1083, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1991).

We need not decide here whether a valid indemnification agreement would bind the federal banking authority and, if so, whether *D'Oench, Duhme* would bar suit against the indemnified individuals, because the indemnity agreements do not require the RTC to indemnify Rifkin and Weaver in the present posture of this case.

The indemnity agreements, executed between Southwest and Rifkin and Weaver in 1985, explicitly provide that Southwest will indemnify its officers if they conducted themselves in good faith. The agreements also state that the scope of the indemnification is to be determined by Arizona law. Arizona law provides that a corporation has the power to indemnify an individual sued as an officer of the corporation "if [s]he acted, or failed to act, in good faith." Ariz.Rev.Stat. Ann. § 10–005(A) (1990). Rifkin and Weaver would thus be entitled to indemnification only for good-faith behavior.

By their own stipulation for the purposes of the summary judgment motion, Rifkin and Weaver have not acted in good faith. Rifkin and Weaver stipulated to the facts as alleged in Brookside's complaint, which alleges that Rifkin and Weaver knew that the high appraisal value for the condominiums was false, and that they lied about the appraisal value "with the intent to deceive and defraud the plaintiffs and with the intent to induce the plaintiffs to purchase the Brookside Condominiums." Because the stipulated facts clearly describe fraudulent rather than good-faith actions, Rifkin and Weaver cannot claim indemnification under the agreements, at least at this stage of the proceedings.

We AFFIRM the district court's grant of summary judgment to the RTC, and REVERSE its grant of summary judgment to Rifkin and Weaver. RTC is awarded costs of appeal against plaintiffs-appellants, otherwise each party shall bear its own costs on appeal.