**LEDO FINANCIAL CORPORATION, Plaintiff–Appellant,**

v.

**Harry L. SUMMERS; Daniel W. Dierdorff; Sun Savings and Loan Association; David Eichten, and Does 1 through 50, inclusive, Defendants–Appellees.**

No. 94–56296.

United States Court of Appeals, Ninth Circuit.

Argued and Submission Deferred Feb. 9, 1996.

Resubmitted June 1, 1997.

Decided Aug. 20, 1997.

---

Laurie Largent, Law Offices of Anton N. Handal, and Nicholas F. Coscia, Dennis & Coscia, San Diego, CA, for plaintiff-appellant.

Barbara Woodall, Federal Deposit Insurance Corporation, Washington, DC, for defendants-appellees.

Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, Jr., Circuit Judges.

Opinion by Judge BRUNETTI; Dissent by Judge NOONAN.

BRUNETTI, Circuit Judge.

Ledo Financial Corporation ("Ledo") appeals the summary judgment for FDIC as receiver for Sun Savings & Loan Association ("Sun"). Ledo claims that it loaned Sun $500,000 in 1984 pursuant to an unwritten agreement. According to Ledo, the loan was not repaid in dollars as originally agreed but rather in Sun stock. Ledo alleges that Sun officials misrepresented the value of the stock at the time of the stock transfer. The district court concluded that the complaint was barred by the D'Oench doctrine. Ledo

argues both that the FDIC waived the D'Oench doctrine defense and that the defense does not apply in this case. We review the grant of summary judgment *de novo, Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995), and we reverse.

### I.

Ledo claims that it loaned Sun $500,000 in 1984 based on an oral agreement that the money would be repaid in 10 days with no interest. It alleges that instead Sun used the funds to purchase 33,400 shares of Sun stock on behalf of Ledo. Ledo has produced no documents indicating that it objected to this change. Ledo filed suit in 1986 alleging federal and state securities violations, RICO violations, fraud and constructive trust. In 1988, after Ledo filed a third amended complaint, the district court stayed proceedings pending exhaustion of administrative remedies. In 1991, the district court dismissed the action for failure to exhaust. This court reversed in light of the Supreme Court's decision invalidating the administrative procedure in question. *Ledo Financial Corp. v. Summers,* 2 F.3d 1157 (9th Cir.1993).

In March 1994, FDIC moved for summary judgment arguing that the sole remaining fraud claim was barred by the D'Oench doctrine, which precludes enforcement of undocumented claims against FDIC-controlled financial institutions. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). The district court rejected Ledo's arguments that the FDIC had waived this argument by failing to file a timely response in October 1993. Counsel for the FDIC explained that the agency was unaware that it had not filed an answer and did so within two days of being informed of its failure. The court concluded that the delay was inadvertent and non-prejudicial.

### II.

Federal Rules of Civil Procedure 8(c), 55, and 60[1] support the district court's decision to allow FDIC to argue the *D'Oench* defense in its summary judgment motion. Although Rule 8 requires affirmative defenses to be included in responsive pleadings, absent prejudice to the plaintiff an affirmative defense may be plead for the first time in a motion for summary judgment. *Camarillo v. McCarthy,* 998 F.2d 638, 639 (9th Cir.1993). Although Ledo suggests that the five month delay in asserting the D'Oench defense amounted to an "ambush," it points to no tangible way in which it was prejudiced by the delay. Noting the "tortuous history" of the case, the district court concluded that there was no tactical advantage gained by the late filing, which it found to be inadvertent.

Apart from asserting that it has been ambushed, Ledo fails to demonstrate to this court how it has been prejudiced by not learning of the D'Oench doctrine defense until March 1994. Before the district court, Ledo argued that it was prejudiced by its need for additional discovery to find written documentation of the loan. While noting that the case dated back to 1986 and that there had been previous discovery, the district court delayed its judgment for two months to allow Ledo to conduct discovery on this matter. In its brief before this court, Ledo never discusses the need for discovery and the additional two months.

With respect to the failure to file a timely answer, the proper course for Ledo under Rule 55 would have been to file for a default judgment, which Ledo did not do. Such a filing would likely have been unsuccessful as Rule 55(e) provides that default judgment is not to be entered against the United States and its agencies unless the claimant establishes his right with evidence satisfactory to the court. Even if default judgment had been entered for Ledo, the district court indicated it would have vacated the judgment, presumably under Rules 55(c) and 60(b), based on its finding of inadvertence. Thus, Ledo could not have been prejudiced by the district court's decision because it would not have been able to obtain a default judgment. *Cf. Veit v. Heckler,* 746 F.2d 508, 512 (9th Cir.1984) (no prejudice where claimant would not have prevailed even if his motion had never been answered).

---

1. All rule references are to the Federal Rules of Civil Procedure.

Finally, Ledo's emphasis on the six-year interval between the initial complaint and the summary judgment motion ignores the procedural history of the case. This court's remand of the case was entered on October 12, 1993. Prior to that time, no answer was due as the district court had dismissed the complaint. Thus the FDIC's response was about five months late.

### III.

We now turn to the district court's conclusion that Ledo's fraud claim is barred by the federal common law D'Oench doctrine and 12 U.S.C. § 1823(e). We disagree.

### A.

We first address the district court's conclusion that Ledo's claim was barred by the federal common law rule.

The D'Oench doctrine, as first articulated by the Supreme Court, protects the FDIC by barring defenses that arise from "secret agreements" made by banking institutions and debtors. *See D'Oench, Duhme & Co., Inc., v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942). In *D'Oench,* the FDIC demanded payment on a note it acquired in a purchase and assumption transaction of a failed bank. *Id.* at 454, 62 S.Ct. at 677. The debtor refused to pay based on a secret side agreement with the bank that the note would not be called for payment. *Id.* The Court held that the Federal Reserve Act reflected a federal policy to protect the FDIC from misrepresentations or misstatements as to the genuineness of the securities in a portfolio of a bank of which it insures. *Id.* at 457, 62 S.Ct. at 679. In order to protect the important federal policy, the Supreme Court created a federal common law rule that bars defenses against claims by the FDIC. *Id.*

This doctrine has been applied by the courts "in virtually all cases where a federal depository institution regulatory agency is confronted with an agreement not documented in the institution's record." *OPS Shopping Ctr., Inc., v. FDIC,* 992 F.2d 306, 308 (11th Cir.1993). Furthermore, it has been applied to protect the FDIC not only in its corporate capacity, but in its receivership capacity as well. *FSLIC v. Two Rivers Assoc., Inc.,* 880 F.2d 1267, 1274, 1276–77 (11th Cir.1989). Under prior case law, therefore, we would be inclined to apply the D'Oench doctrine in this case, where the FDIC is acting as receiver. Two recent Supreme Court decisions, however, have called into question whether it is appropriate to apply the federal common law rule announced in *D'Oench* in this case. *See Atherton v. FDIC,* ⸺ U.S. ⸺, 117 S.Ct. 666, 136 L.Ed.2d 656 (1997); *O'Melveny and Myers v. FDIC,* 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

### 1.

The Court in *O'Melveny* held that cases in which application of federal common law is appropriate are "few and restricted, limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." 512 U.S. at 85, 114 S.Ct. at 2053. In *Atherton* and *O'Melveny,* the Court found that the federal interests asserted were insufficient to warrant application of federal common law.

In *Atherton,* the Court declined to apply federal common law in a suit brought by the FDIC as receiver for a federally chartered, federally insured bank. The FDIC sued the bank's directors and officers for negligence and argued for a federal common law standard to govern the standard of care. The Court rejected a number of FDIC's arguments in support of their contention that sufficient federal interests existed.

First, the Court rejected the FDIC's argument that federally chartered banks need a uniform standard to be governed by and that "superimposing state standards of fiduciary responsibility over standards developed by a federal chartering authority would upset the balance that a federal chartering authority may strike." *Atherton,* ⸺ U.S. at ⸺, 117 S.Ct. at 671. Important to the Court's reasoning was that there are an equal number of state chartered and federally chartered banks which are federally insured. *Id.* "[A]nd a federal standard that increased uniformity among the former would increase disparity among the latter." *Id.* Furthermore, "the National banking system has

thrived despite disparities in corporate governance." *Id.* Second, the Court held that a federal charter alone did not justify application of federal common law. *Id.* at ——, 117 S.Ct. at 671. The Court recognized that while a century ago a federal charter may have created a substantial federal interest, presently, "a federal charter by itself shows no conflict, threat, or need for 'federal common law.'" *Id.* at —— – ——, 117 S.Ct. at 672–673. Third, the Court stated that receivership capacity did not create a sufficient federal interest. "The FDIC is acting only as a receiver of a failed institution; it is not pursuing the interest of the Federal Government as a bank insurer-an interest likely present whether the insured institution is state, or federally, chartered." *Id.* at ——, 117 S.Ct. at 673.

Similarly, in *O'Melveny* the Court refused to apply a federal common law rule where the FDIC asserted a state law cause of action against the corporate officers. *O'Melveny,* 512 U.S. at 83–85, 114 S.Ct. at 2052–53. Responding to the FDIC's argument that federal law should govern when the FDIC is acting as a receiver, the Court explained "the FDIC is not the United States"; and there is no "question involving rights of the United States arising under nationwide federal programs." 512 U.S. at 85, 114 S.Ct. at 2053. It would be begging the question to assume that the FDIC was "asserting its own rights rather than, as receiver, the rights of [the insured institution]." *Id.* In *O'Melveny,* the Court discerned no federal interest.

> The rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, as receiver, with respect to primary conduct on the part of private actors that already occurred. Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty-but if avoidance of those ordinary conse-

quences qualified as an identifiable federal interest, we would be awash in 'federal common law' rules.

*Id.* at 88, 114 S.Ct. at 2055. Furthermore, the Court noted that depletion of the deposit insurance fund does not constitute an identifiable, concrete federal interest. *Id.*

2.

▪ In light of *Atherton* and *O'Melveny,* we now consider whether it is appropriate to apply federal common law in this case. We conclude that no unique federal interest exists to justify application of federal common law.[2] In the instant case, the FDIC is simply acting as a receiver of the failed Sun Savings & Loan Association. It is not pursuing the interest of the United States. Unlike in *D'Oench,* the FDIC has not itself acquired the note. The Court has explained that simply because a bank is federally insured or federally chartered does not justify application of a common law doctrine. *Atherton,* —— U.S. at ——, 117 S. Ct at 671. Moreover, depletion of the insurance fund does not create a federal interest. *O'Melveny,* 512 U.S. at 88, 114 S.Ct. at 2054. When the FDIC acts as receiver, it stands in the shoes of the insolvent bank. The federal interests involved in this case are not more substantial than the federal interests involved in *O'Melveny* and *Atherton.* Accordingly, the district court erred by applying federal common law in this case.

B.

▪ We next address the district court's conclusion that in the alternative Ledo's claim was barred by 12 U.S.C. § 1823(e) in the alternative. The district court erred by finding that the § 1823(e) is applicable in this case.

Section 1823(e) of FIRREA invalidates agreements tending to "diminish or defeat the interest of the Corporation in any asset acquired by it ..." unless those agreements

---

**2.** The dissent misunderstands our inquiry in this regard. We do not reach the question whether the D'Oench doctrine itself has been overruled by *Atherton* and *O'Melveny.* Indeed, we assume it has not been for the reasons expressed by Judge Noonan. However, we conclude that *Atherton*

and *O'Melveny* are precedents with direct application in this case. They lead us to the conclusion that it would not be appropriate to apply any federal common law rule in this case, whether it be D'Oench or otherwise.

have been approved by the bank's directors or loan committee and are in writing an on record with the bank. 12 U.S.C. § 1823(e) (Supp. V 1994). This court has previously held that § 1823(e) applies solely to assets and not to agreements pertaining to liabilities of a bank in receivership. *See Murphy v. FDIC*, 38 F.3d 1490, 1500–01 (9th Cir.1994) (en banc). Because the oral agreement in this case pertains to liabilities of the bank, § 1823(e) is inapplicable in the instant case.

## IV.

Because federal common law does not apply, and because there is no analogous federal statutory law, the district court should look to state law for a rule of decision in this case. *See Atherton*, —— U.S. at ——, 117 S.Ct. at 676; *O'Melveny*, 512 U.S. at 89, 114 S.Ct. at 2055. Accordingly, we reverse the district court's summary judgment in favor of the FDIC with instructions to apply the appropriate California law to Ledo's fraud claim.

REVERSED and REMANDED for further proceedings consistent with this opinion.

NOONAN, Circuit Judge, dissenting:

This case is an easy one if prior law is still good law. We have explicitly held that the *D'Oench, Duhme* doctrine bars suit based on oral statements not found in the bank files after the federal receiver has taken over the bank. *Brookside Associates v. Rifkin*, 49 F.3d 490, 495 (9th Cir.1995).

The court acknowledges that "it would be inclined to apply the *D'Oench* doctrine" but does not do so because two recent Supreme Court decisions have called this special federal common law doctrine into question. The question is heightened by the Supreme Court's treatment of *Motorcity of Jacksonville v. Southeast Bank*, 83 F.3d 1317 (11th Cir.1996), vacated and remanded for reconsideration sub nom. *Hess v. FDIC*, —— U.S. ——, 117 S.Ct. 760, 136 L.Ed.2d 708 (1997). However, as the FDIC's spirited argument makes clear, it is not a foregone conclusion that the Eleventh Circuit was wrong in following *D'Oench*. The Supreme Court has not overruled *D'Oench*, a case that has been

in force for 55 years. The Supreme Court has laid down as a rule for reasons good and sufficient to itself: "If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express*, 490 U.S. 477, 484, 109 S.Ct. 1917, 1921, 104 L.Ed.2d 526 (1989). It seems to me, with all respect to my colleagues, that they flout the rule.