64 F.3d 670
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 RESOLUTION TRUST CORPORATION, as Receiver for Western Gulf
Savings and Loan Association, a Texas Savings and
Loan association, Plaintiff-Appellant,
v.
Wallace R. NOEL, Defendant-Appellee.
 No. 94-1195.
 United States Court of Appeals, Tenth Circuit.
 Aug. 16, 1995.
 
 ORDER AND JUDGMENT[1]
 Before TACHA, Circuit Judge, McWILLIAMS, Senior Circuit Judge, and BURRAGE, District Judge.[2]
 PER CURIAM.
 
 
 1
 On November 8, 1990, the Resolution Trust Corporation (RTC) was appointed receiver for the Western Gulf Savings & Loan Association (Western Gulf), whose principal place of business was in Bay City, Texas. On November 21, 1990, RTC brought the present action in the United States District Court for the District of Colorado against Wallace R. Noel (Noel) for payment of the balance due on a promissory note given for a loan for the development of a condominium project, consisting of approximately 100 units, in Fort Collins, Colorado. The defendant, Noel, owned the land on which the condominiums were to be built. The entity which was to be used to build the condominiums was University Courts Partnership Ltd. (University Courts), a partnership consisting of Mile High Mortgage and Investment Company of Colorado, Inc. (Mile High), the general partner with a 50% interest, and Noel as a limited partner with a 25% interest, and other limited partners also with a 25% interest. Mile High, a Colorado corporation, was owned by Western Gulf Service Corporation (WGSC) with a 51% interest and by one Roy Pogue who had a 49% interest. WGSC was a subsidiary of Western Gulf.
 
 
 2
 University Courts borrowed $2,500,000 from Western Gulf.[3] Mile High, through its executive vice-president Pogue, signed the note for University Courts as its general partner. Noel also signed the note as a limited partner and individually. Pogue and Noel at the same time entered into an indemnity agreement whereby Pogue agreed to indemnify Noel for any liability Noel might incur resulting from his signing the note. The loan closed on May 25, 1983, and shortly thereafter University Courts paid Noel $610,000 out of the loan proceeds for his land on which the condominiums were to be built. The note was payable to Mile High, but was immediately assigned to Western Gulf. In October, 1983, WGSC bought out Pogue's interest in Mile High.
 
 
 3
 When the promissory note became due on May 25, 1984, University Courts requested an extension of the due date of the note. Over Noel's objection, Western Gulf extended the due date on the note to November 25, 1984, and there was a second extension to May 25, 1985. The note was not paid by May 25, 1985, and went into default, and Western Gulf took control of the property on which the condominiums had been built. In March, 1990, Western Gulf foreclosed on the properties here involved and bid $863,655.90 at the foreclosure sale, leaving a deficiency of $2,552,799.13.
 
 
 4
 In its original complaint filed on November 21, 1990, RTC asserted two claims for relief: one claim based on the promissory note, and a second claim for unjust enrichment based on the fact that Noel received the benefit of the $2,500,000 loan which had never been repaid. Noel filed an answer to the complaint and asserted several affirmative defenses, including his right to set-off or recoupment.
 
 
 5
 RTC filed an amended complaint on July 27, 1992, which, in addition to the claims on the note and for unjust enrichment, included four claims based on false representation, non-disclosure and concealment, civil conspiracy to commit false representation and civil conspiracy to commit non-dislosure and concealment. These additional claims were based on statements made by Noel when deposed in July, 1992, to the effect that when he signed the note in question on May 25, 1983, he did not, in fact, intend to ever make any payment thereon.[4]
 
 
 6
 In this setting, Noel filed a motion to dismiss or, in the alternative, for summary judgment. The basis for the motion was that the four fraud related claims were barred by a three-year statute of limitations, that the claim for unjust enrichment was unfounded, and that RTC's claim against Noel based on the promissory note was subject to set-off because Noel was entitled to indemnification from Mile High which Noel claimed was the alter ego of Western Gulf.
 
 
 7
 After hearing, the district court on March 8, 1993, denied the motion to dismiss or, in the alternative, for summary judgment. In so doing, the district court held that question of just when Western Gulf knew, or reasonably should have known, of the alleged fraud of Noel in signing the note without any intent to repay could not be resolved on motion for summary judgment.
 
 
 8
 As concerns RTC's claim based on the promissory note, the district court held that "this claim cannot be decided on a motion for summary judgment."
 
 
 9
 The district court also denied the motion for summary judgment on RTC's claim based on unjust enrichment. As to that particular claim, the district court focused on the fact that immediately after the loan Noel sold land which had been appraised at $580,000 to University Courts for $610,000.
 
 
 10
 On November 12, 1993, Noel filed a second motion for summary judgment, asserting that as a result of "recent depositions, facts have come to light which demonstrate the plaintiff's assertions in opposition to first motion, assertions which formed the basis for ... the Court's Memorandum Opinion [of March 8, 1993], are without merit" and that Noel was entitled to summery judgment on all claims.
 
 
 11
 On March 8, 1994, the district court held a hearing on Noel's second motion for summary judgment, which consisted of colloquy between court and counsel, at the conclusion of which the court took the matter under advisement. On March 22, 1994, the district court in a Memorandum Opinion and Order granted the motion for summary judgment and dismissed all of RTC's claims. As concerns RTC's several fraud claims, the district court held that all were barred by Colorado's three-year statute of limitations, C.R.S. 13-80-101(1)(2). In thus holding, the district court found that Western Gulf either knew, or by the exercise of reasonable diligence should have known, by "mid-1985" that Noel when he signed the note did not intend to ever make payment thereon.
 
 
 12
 As concerns RTC's claim on the promissory note, the district court found that Mile High was the alter ego of Western Gulf[5] and that Noel, as a guarantor of the note, was not liable to Western Gulf and therefore had "no liability to RTC's receiver for Western Gulf on the note."
 
 
 13
 In finding Mile High to be the alter ego of Western Gulf, the district court noted the ten factors to be considered in determining whether to pierce the corporate veil as set forth in Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc., 878 F.2d 1259, 1262-63 (10th Cir.1989), and found seven of those ten factors to be present in the instant case and sufficient to pierce the corporate veil and find one to be the alter ego of the other. In such circumstance, the district court concluded that Noel was no more liable on the note to Western Gulf than he was to Mile High, and that in any event any possible liability on the note would be offset by the right of recourse he had against Mile High, and therefore recourse he had against Western Gulf. Finally, on this claim, the district court recognized that to prevail under the alter ego doctrine, Noel also had to prove that the corporate entity was used to defeat public convenience, or to justify or protect wrong, fraud or crime, again citing Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc., 878 F.2d at 1264-65. In this connection, the district court stated that RTC, "by pursuing Noel, is using the corporate entities to 'protect wrong.' "
 
 
 14
 As concerns RTC's unjust enrichment claim, the district court found that by selling his land, which had an appraised value of $580,000, to University Courts for $610,000, Noel was not unjustly enriched since he used the $30,000 differential, or most of it, "to pay off interest that had accrued on the loan by which he acquired the land."
 
 
 15
 On appeal, RTC argues that the district court erred in granting summary judgment for Noel on its several fraud claims and on its claim based on the promissory note. RTC does not argue on appeal that the district court erred in entering summary judgment in favor of Noel on its claim based on unjust enrichment. Accordingly, that part of the district court's judgment dismissing RTC's claim of unjust enrichment is affirmed. However, that part of the district court's judgment granting Noel summary judgment on RTC's claims based on fraud and on the promissory note and dismissing those claims is reversed.
 
 
 16
 This Court reviews a grant of summary judgment de novo, applying the same standard as the district court. Cone v. Longmont United Hospital Assn., 14 F.3d 526, 527 (10th Cir.1994). Summary judgment is appropriate if there "is no general issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); Celatex Corp. v. Calrett, 477 U.S. 317, 322-23 (1986). This Court views the evidence and draws any inferences in the light most favorable to the party opposing summary judgment. MacDonald v. Eastern Wyoming Mental Health Center, 941 F.2d 1115, 1117 (10th Cir.1991). The opposing party, however, must identify sufficient evidence to require submission of the case to the jury. MacDonald, 941 F.2d at 1121-22.
 
 
 17
 As indicated, the district court initially denied Noel's motion for summary judgment on RTC's claims based on fraud and on the promissory note with the observation that such claims simply could not be resolved by summary judgment and presented fact issues that should be resolved at trial. Later, on a second motion for summary judgment, the district court determined that summary judgment was proper on both the fraud claims and the claim based on the promissory note.
 
 
 18
 Our study of the record before the district court when it granted Noel's second motion for summary judgment leads us to conclude that the district court erred and that the claims based on fraud and the note cannot be resolved by summary judgment.
 
 
 19
 As to the fraud claims, the district court assumed fraud, but concluded that each was time-barred by a three-year statute of limitations. It should be remembered that the core of the fraud claims was that when Noel signed the note on May 25, 1983, he, at that time, had no intent to ever pay anything on the note. In this regard, the district court found that Western Gulf either knew, or should have known, by "mid-1985" that Noel never intended to make any payment on the note. RTC's position on this matter is that it really didn't know that on May 25, 1983, Noel didn't intend to repay the note until Noel was deposed in July, 1992, during the course of the present litigation, and that by the exercise of reasonable diligence Western Gulf could not have discovered the fraudulent intent before 1989, when certain documents were turned over to Western Gulf by Noel, and that such was within the three-year statute. All things considered, the date when Western Gulf knew, or should have known, that on May 25, 1983, Noel had no intention of ever paying anything on the note cannot be resolved on summary judgment.
 
 
 20
 Similarly, the ten factors to be considered in determining whether the corporate veil should be pierced and whether Mile High was the alter ego of Western Gulf presents, in our view, a fact question which, on the record before the district court, could not be resolved by summary judgment. The question of whether Mile High really is the alter ego of Western Gulf should first be properly decided before addressing the legal consequences thereof.
 
 
 21
 Another matter deserves some comment. In connection with Noel's claims for indemnity from Mile High based on the alter ego theory, RTC argues in this Court that under D'Oench, Dahone & Co. v. FDIC, 315 U.S. 447 (1942), and its progeny, the RTC and FDIC are not subject to claims or defenses which are based on transactions tending to mislead examiners or unrecorded agreements which are not properly reflected in the official books and records of a failed thrift or bank. In Noel's brief, counsel argues that all agreements relied on by Noel are fully documented in the official books and records of Western Gulf. We are uncertain whether this particular matter was addressed in the district court. We do know, however, that in its Memorandum Opinion and Order of March 22, 1994, there is no mention of D'Oench.
 
 
 22
 The judgment dismissing RTC's claim based on unjust enrichment is affirmed. The judgment dismissing the fraud claims and the claim based on the note is reversed and the case is remanded for further proceedings.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Honorable Michael Burrage, District Judge of the Eastern and Northern Districts of Oklahoma, sitting by designation
 
 
 [3]
 On May 10, 1983, Pogue and Noel submitted a construction loan application to Western Gulf
 
 
 [4]
 The amended complaint also contained a new claim for breach of the covenant of good faith and fair dealings, which claim was later dismissed when RTC confessed Noel's motion to dismiss that particular claim
 
 
 [5]
 Specifically, the district court held it was "proper to treat Western Gulf and Mile High as the same entity for the purposes of resolving Noel's liability in this action."