**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                                    Elisabeth A. Shumaker
    Clerk                                                                                                        Chief Deputy Clerk

May 17, 1999

**TO:**  ALL RECIPIENTS OF THE OPINION

**RE:**  98-1021, *FDIC v. Noel*
        Filed on May 14, 1999

        The slip opinion filed on May 14, 1999, contains a word processing error on page 14, footnote number 5.  Please disregard the gray shading around footnote number 5.

        A copy of the corrected page 14 is attached.

                                    Sincerely,
                                    Patrick Fisher, Clerk of Court


                                    By:   Keith Nelson
                                          Deputy Clerk




encl.

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 14 1999**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver for
Western Gulf Savings and Loan
Association, a Texas savings and loan
association,

        Plaintiff-Counter-
        Defendant-Appellee,

    v.

WALLACE R. NOEL,

        Defendant-Counter-
        Claimant-Appellant.

No. 98-1021

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D. Ct. No. 90-B-2066)**

---

David M. Berrett, Barnett, Berrett, King & Southam, LLC, Aurora, Colorado
(Scott Rothenberg, Law Offices of Scott Rothenberg, Bellaire, Texas, on the
opening brief), appearing for Appellant.

Maria Beatrice Valdez, Counsel, Federal Deposit Insurance Corporation,
Washington, DC (Ann S. DuRoss, Assistant General Counsel, and Lawrence
Richmond, Acting Senior Counsel, Federal Deposit Insurance Corporation,
Washington, DC, and James R. Miller and Paul R. Wood, Miller & Welch, LLC,
Denver, Colorado, with her on the brief), appearing for Appellee.

---

Before **TACHA**, **HENRY**, and **MURPHY**, Circuit Judges.

**TACHA**, Circuit Judge.

The Resolution Trust Corporation ("RTC"), as receiver for Western Gulf Savings and Loan Association, brought this action against Wallace R. Noel for breach of a promissory note, deceit, and other claims arising out of a failed real estate transaction. Noel asserted numerous defenses and counterclaims against the RTC. The Federal Deposit Insurance Corporation ("FDIC") statutorily succeeded the RTC and moved for summary judgment, arguing that the D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), doctrine barred defendant's affirmative defenses and counterclaims. The district court granted its motion, holding that Noel breached the promissory note as a matter of law. The FDIC's claims for deceit and other tort causes of action were tried to a jury. The jury found in favor of the FDIC, and the court entered final judgment in accordance with the jury verdict and rejected defendant's motion for new trial or judgment as a matter of law. Defendant appeals from these orders. We affirm.

## I. Background

In 1982, Noel bought a piece of undeveloped property near the Colorado State University campus in Fort Collins, Colorado, which he sought to develop. Soon after purchasing the land, Noel met Ray Pogue, who presented himself as a developer with contacts at several institutions that could arrange financing for the

development of Noel's land. Noel entered into an agreement to form University Courts Partnership Ltd. ("University Courts"), a limited partnership consisting of Mile High Mortgage and Investment Company of Colorado, Inc. ("Mile High"), Noel, and others. Mile High, the general partner, owned a 50% interest, Noel, a limited partner, owned 25%, and various other limited partners cumulatively owned 25%. Western Gulf Service Corporation ("WGSC") owned 51% of Mile High, while Pogue owned the other 49%. WGSC was a subsidiary of Western Gulf Savings and Loan Association ("Western Gulf").

In 1983, Pogue and Noel applied for a $2.5 million construction loan from Western Gulf. Pogue sent Western Gulf Noel's financial statement, showing a net worth in excess of $5 million, asking that Western Gulf "add this 'strength' to the documents [it] had on University Courts." Appellant's App., Vol. II, tab A3. The loan closed on May 25, 1983. Mile High, through its executive vice-president Pogue, signed the note for University Courts as its general partner. Noel signed the note both as a limited partner of University Courts and in his individual capacity. At the closing, Pogue and Noel entered into an written agreement in which Pogue agreed to indemnify Noel for any liability Noel might incur on the note. Western Gulf, however, never released Noel from liability on the note. Shortly after the closing, University Courts paid Noel $610,000 out of the loan proceeds for his land.

Although payable to Mile High, Mile High immediately assigned the note to Western Gulf. In October 1983, WGSC bought Pogue's 49% share in Mile High. Mile High thus became a wholly-owned subsidiary of Western Gulf.

When the promissory note became due on May 25, 1984, Western Gulf extended the note, over Noel's objection, until November 25, 1984, and again to May 25, 1985. According to the terms of the note, Western Gulf did not need Noel's permission to extend the payment date. University Courts did not pay the note, and it went into default. By mid-1985, Western Gulf took control of the property. It also ceased the operations of WGSC and Mile High. In March 1990, Western Gulf foreclosed on the property. It bid $863,655.90 at the foreclosure sale, leaving a deficiency of $2,552,799.13 on the note. On November 8, 1990, the RTC was appointed receiver of Western Gulf, and it filed this lawsuit against Noel on November 21, 1990. Thus began this lawsuit's lengthy sojourn through the court system.

RTC's original complaint alleged one claim based on the promissory note, and another claim for unjust enrichment based on the fact that Noel received the benefit of a $2.5 million loan without repaying it. Noel filed an answer, asserting several affirmative defenses, including his right to set-off or recoupment, and five counterclaims. The RTC amended its complaint on July 27, 1992, adding four claims based on false representation, non-disclosure and concealment, civil

conspiracy to commit false representation, and civil conspiracy to commit nondisclosure and concealment.[1] The RTC premised these new allegations on Noel's deposition testimony in which he stated that when he signed the note, he did not intend to ever make payments.

Noel filed a motion to dismiss, arguing that the statute of limitations barred the fraud claims, the unjust enrichment claims were unfounded, and RTC's claim against him based on the promissory note was subject to set-off because he was entitled to indemnification from Western Gulf, which he claimed acted as the alter ego of Mile High. The district court granted summary judgment in favor of Noel. In an unpublished order and judgment, we affirmed the district court's dismissal of the RTC's unjust enrichment claims, but reversed the district court's grant of summary judgment on the RTC's fraud claims and Noel's claims based on the alter ego doctrine, holding that genuine issues of material fact precluded summary judgment. See Resolution Trust Corp. v. Noel, No. 94-1195, 1995 WL 490293, at *4 (10th Cir. Aug. 16, 1995). We also noted that the district court order contained no mention of D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942). See id.

On remand, the FDIC, RTC's statutory successor, filed a motion for

---

[1] The amended complaint also contained a new claim for breach of the covenant of good faith and fair dealing. This claim was later dismissed when the RTC confessed Noel's motion to dismiss that particular claim.

summary judgment, asserting that the D'Oench doctrine and 12 U.S.C. § 1823 barred Noel's counterclaims and affirmative defenses. The common law D'Oench doctrine and its statutory codification, 12 U.S.C. § 1823, prohibit claims based on agreements not reflected in the official records of a failed bank or savings and loan institution. Noel responded that his counterclaims and affirmative defenses met the requirements of D'Oench. On June 17, 1996, the district court granted summary judgment in favor of the FDIC on its promissory note claim. It held that Noel could not use the alter ego doctrine against the FDIC because the FDIC was not culpable for Western Gulf's behavior and no inequity would result from it recovering. It further held that D'Oench and 12 U.S.C. § 1823(e) barred his counterclaims and defenses, despite Noel's argument that a bank regulator would have been on notice that Noel had legal claims against Western Gulf, because none of the documents proffered by Noel met the § 1823(e) requirements.

Noel moved for reconsideration, which the district court denied on April 25, 1997. The court, on motion by Noel, clarified its summary judgment order, noting that Noel's motion for clarification was, "in essence, a thinly veiled third motion for reconsideration of [its] June 17, 1996, order." Dist. Ct. Order at 3 (May 13, 1997). It stated that it had granted the FDIC's motion for summary judgment on Noel's counterclaims for breach of fiduciary duty and accounting and dissolution of partnership. It also dismissed Noel's counterclaim for punitive

damages,[2] leaving for trial the FDIC's claims for fraud and conspiracy.

The FDIC's remaining claims proceeded to trial, and the jury returned a verdict in favor of the FDIC for $2,552,779.13. The court entered judgment in accordance with the jury verdict. Noel subsequently moved for judgment as a matter of law, for new trial, and to alter or amend the judgment. Noel again argued that the district court erred in granting summary judgment on the FDIC's promissory note claim and attendant dismissal of Noel's defenses and counterclaims. He argued, in part, as he did in his motion for reconsideration of the summary judgment order, that the court ignored evidence of the FDIC's involvement with Western Gulf in acts that form the basis for his claims predicated on the alter ego doctrine. Noel also asserted that the district court erroneously applied § 1823(e) retroactively. In his reply brief to this motion, Noel, for the first time, argued that D'Oench does not apply to the FDIC in its receivership capacity. The court denied Noel's motion.

Noel timely filed his notice of appeal. He argues on appeal that the district court erred when it applied § 1823(e) to this case. He further argues that the common law D'Oench doctrine does not apply to the FDIC in its receivership capacity. In his reply brief on appeal, he asserts that if the D'Oench doctrine does apply, his alter ego/breach of fiduciary duty counterclaim meets its requirements.

---

[2] Noel had previously withdrawn his other two counterclaims for fraud and fraud in the inducement.

## II. Waiver

"[A] federal appellate court [will] not consider an issue not passed upon below." Singleton v. Wulff, 428 U.S. 106, 120 (1976). Consequently, when a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review. See Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 722-23 (10th Cir. 1993) (recognizing that an "untimely motion . . . is not sufficient to preserve an issue for appellate review," and not addressing on appeal an issue that defendant raised for the first time below in a post-trial motion); Melton v. City of Oklahoma City, 879 F.2d 706, 718 n.15 (10th Cir. 1989) (finding issue that party did not properly raise before district court until Motion for Judgment N.O.V. was not properly preserved for appeal); Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1285 (10th Cir. 1988) (declining to address arguments on appeal not considered below because litigant first raised them in a motion for reconsideration). In this case, Noel failed to timely present the issue of whether the D'Oench doctrine applies to the FDIC as receiver to the district court. Noel did not argue that the D'Oench doctrine does not apply to the FDIC when it acts in its receivership capacity until his reply brief in support of a motion for new trial, judgment as a matter of law, and to alter or amend judgment. He filed this motion after completion of the trial and nearly seventeen months after the district

court entered summary judgment pursuant to the D'Oench doctrine. Moreover, Noel did not even raise this issue in his initial brief in support of his post-trial motion; he waited until his *reply* brief. The district court, not surprisingly, did not address the merits of this issue in its one-page order denying Noel's motion. See Dist. Ct. Order (Dec. 19, 1997).

Noel argues that despite his tardiness in raising it below, we should not preclude this argument because it stems from two opinions, Atherton v. FDIC, 117 S. Ct. 666 (1997), and Ledo Fin. Corp. v. Summers, 122 F.3d 825 (9th Cir. 1997), issued after the court's ruling on summary judgment. In Ledo, the Ninth Circuit, relying on the principles enunciated in O'Melvany & Myers v. FDIC, 512 U.S. 79, 83-85 (1994) and Atherton, 117 S. Ct. at 673, concluded that "no unique federal interest exists to justify application of federal common law." Ledo, 122 F.3d at 829. Thus, it held that the common law D'Oench doctrine does not apply to the FDIC as receiver. See id. Noel argues that we should follow the reasoning of the Ninth Circuit.

Although new law often justifies an untimely motion, this exception does not apply in this case. Even assuming, without deciding, that Atherton changed the legal landscape in applying the common law D'Oench doctrine and even if we were to accept the Ninth Circuit reasoning, Noel could have raised these arguments in the district court prior to June 1996. Related arguments regarding

the vitality of D'Oench as it applies to the FDIC in its receivership capacity have been argued since O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994). See Motorcity of Jacksonville, Ltd. v. Southeast Bank, 83 F.3d 1317, 1327, 1329-30 (11th Cir. 1996) (en banc), vacated by Hess v. FDIC, 519 U.S. 1087 (1997); DiVall Insured Income Fund Ltd. Partnership v. Boatmen's First Nat'l Bank of Kansas City, 69 F.3d 1398, 1401-03 (8th Cir. 1995); Murphy v. FDIC, 61 F.3d 34, 38-40 (D.C. Cir. 1995). Indeed, the Ninth Circuit in Ledo explicitly relied, in part, on O'Melvany & Myers. See Ledo, 122 F.3d at 828-29. The Supreme Court issued O'Melveny & Myers on June 13, 1994, two years prior to the district court's grant of summary judgment in this case. Noel has no excuse for failing to timely raise this argument.

Moreover, even if we accepted Noel's argument, he has failed to assert any reason for his failure to include this argument in his initial post-verdict motion. Both decisions upon which Noel purportedly relies were issued months before he filed his motion for new trial, judgment as a matter of law, and to alter or amend judgment. In choosing not to assert this argument until his reply, Noel precluded a response by the FDIC and prevented reasoned consideration by the district court. Therefore, we hold that Noel has waived the argument that the D'Oench common law doctrine does not apply to the FDIC as receiver.

## III. 12 U.S.C. § 1823(e) and D'Oench

- 10 -

Noel argues that the district court erred in granting FDIC's motion for summary judgment by retroactively applying 12 U.S.C. § 1823(e) and rejecting his argument that the D'Oench doctrine does not bar his defenses and counterclaims because they arise from documents contained in the records of Western Gulf. We review de novo the district court's grant of summary judgment, construing the factual record and the reasonable inferences drawn from it in the light most favorable to the nonmoving party. See, e.g., Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996). In deciding the appropriateness of summary judgment, "[w]e are not limited to the grounds upon which the trial court relied but may base summary judgment on any proper grounds found in the record to permit conclusions of law." Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 882 (10th Cir. 1997) (internal quotation marks and citation omitted)). Thus, we "affirm the district court's decision to grant summary judgment if the record contains any basis to do so." Morgan v. Hilti, Inc., 108 F.3d 1319, 1321 (10th Cir. 1997) (quoting Jones v. Unisys Corp., 54 F.3d 624, 628 (10th Cir. 1995)).

Noel contends that the district court erred by retroactively applying the requirements of 12 U.S.C. § 1823(e) to this case. We agree. Prior to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA") amendments in 1989, § 1823(e) applied only to the FDIC in its corporate capacity.

We have previously held that "the 1989 statute's extension to the FDIC as receiver of section 1823(e)'s provisions . . . does not apply retroactively." Oklahoma Radio Assocs. v. FDIC, 987 F.2d 685, 690 (10th Cir. 1993). Because the conduct of the parties and the agreements at issue here took place prior to 1989, the district court erred in applying § 1823(e) to this case. Nevertheless, we may affirm the district court's grant of summary judgment if § 1823(e)'s common law counterpart, the D'Oench doctrine, bars defendant's claim.[3]

On appeal, Noel argues that Western Gulf, as an alter ego of Mile High, breached the fiduciary duties articulated in University Court's partnership agreement.[4] He asserts that the records of Western Gulf contained the partnership agreement and other documents sufficient to preclude the D'Oench doctrine from barring his breach of fiduciary duty claim. He also argues that the FDIC cannot

_____

[3] In his opening brief, Noel states that "if the common law permutation of 1823(e), that is, D'Oench Duhme applies to Noel's claims, then Noel is not entitled to relief herein." Appellant's Br. at 15. Although we could appropriately consider the argument regarding whether Noel can meet the requirements of D'Oench waived for not arguing, indeed conceding, it in his opening brief, see State Farm Fire & Cas. Co. v. Mhoon, 31 F.3d 979, 984 n.7 (10th Cir. 1994), we reach the merits of his argument. Noel vigorously argued to the district court that his defenses and counterclaims met the requirements of D'Oench. He further asserted this argument in his reply brief, characterizing his opening brief concession as error. Given the particular circumstances of this case, including the thorough examination of the argument by the FDIC contained in the record, we do not deem this argument waived.

[4] To the extent that Noel may have desired us to consider affirmative defenses and counterclaims beyond the alter ego/breach of fiduciary duty claim, we decline to do so. Noel did not argue in his opening brief, nor his reply brief, that he could meet the requirements of the common law D'Oench doctrine with respect to additional counterclaims and other defenses originally raised in his answer. Thus, he has waived those issues on appeal. See, e.g., Mhoon, 31 F.3d at 984 n.7 (finding waiver when defendant fails to raise issue in opening brief).

assert the D'Oench doctrine because Western Gulf was acting under an operating agreement with RTC when Western Gulf breached the partnership agreement.

The federal common law D'Oench doctrine, first set forth by the Supreme Court in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942), "prohibits claims based upon agreements which are not properly reflected in the official books or records of a failed bank or thrift." Young v. FDIC, 103 F.3d 1180, 1187 (4th Cir.) (internal quotation marks omitted), cert denied, 118 S. Ct. 329 (1997). In D'Oench, the FDIC sued the maker of a demand note payable to Bellville Bank and Trust Company, a failed institution. The maker defended against the claim by presenting receipts for the notes which indicated an agreement between the maker and bank that the bank would not call the notes for repayment. In concluding that the maker could not raise a "secret" agreement with the bank to defend against the FDIC's suit, the Court recognized a "federal policy to protect [the FDIC] and the public funds which it administers against misrepresentations as to the securities or other assets in the portfolios of the banks which [it] insures or to which it makes loans." D'Oench, 315 U.S. at 457. Therefore, the Supreme Court stated:

> The test [for the doctrine's applicability] is whether the note was designed to deceive the creditors or the public authority[,] or would tend to have that effect. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled.

D'Oench, 315 U.S. at 460; accord Oklahoma Radio Assocs., 987 F.2d at 691.

- 13 -

Since 1942, federal courts have expanded the common law doctrine beyond the narrow facts of D'Oench, applying it, for example, to the FDIC as receiver and to other federal banking agencies.[5] See, e.g., Castleglen, Inc. v. Resolution Trust Corp., 984 F.2d 1571, 1576 (10th Cir. 1993); Motorcity of Jacksonville, Ltd. v. Southeast Bank, 83 F.3d 1317, 1325 (11th Cir. 1996) (en banc) (citing cases), vacated by Hess v. FDIC, 519 U.S. 1087 (1997). While the purpose underlying the D'Oench doctrine, to "permit regulators to accurately appraise the assets of savings institutions by allowing the regulators to rely on the assets' face value," Castleglen, 984 F.2d at 1577, has remained constant during its evolution, "its focus has shifted from the fraudulent, illegal, or secret character of the debtor's acts to the effect the acts have on the regulatory agency's ability to evaluate quickly and accurately a savings institution's assets," id. at 1576. Bank examiners must often conduct these evaluations and decide the course of the bank's fate overnight. See Langley v. FDIC, 484 U.S. 86, 91-92 (1987). The design of the D'Oench doctrine thus "favors the interests of depositors and creditors of a failed bank, who cannot protect themselves from secret agreements,

---

[5]We recognize that several courts, relying on FIRREA's enactment and/or the Supreme Court's opinions in O'Melveny & Myers v. FDIC, 512 U.S. 79 (1994), and Atherton v. FDIC, 117 S. Ct. 666 (1997), have found that the D'Oench common law doctrine no longer applies to the FDIC in its receivership capacity. See Ledo Fin. Corp. v. Summers, 122 F.3d 825 (9th Cir. 1997); DiVall Insured Income Fund Ltd. Partnership v. Boatmen's First Nat'l Bank of Kansas City, 69 F.3d 1398 (8th Cir. 1995); Murphy v. FDIC, 61 F.3d 1995. Because Noel waived this argument, we do not address the issue and assume for the purposes of this case only the applicability of the common law D'Oench doctrine.

over the interests of borrowers, who can." Bell & Murphy & Assocs. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 754 (5th Cir. 1990); see also Motorcity, 83 F.3d at 1325.

Given the overarching purposes behind the doctrine, courts have consistently held that inferences that an examiner could feasibly draw from a failed institution's written records are insufficient to preclude the operation of D'Oench. See Resolution Trust Corp. v. Allen, 16 F.3d 568, 575 (4th Cir. 1994) ("Enforcement of agreements which must be inferred from written recorded agreements is forbidden under D'Oench Duhme; *explicit* written documentation is required." (emphasis added)); Community Bank of the Ozarks v. FDIC, 984 F.2d 254, 257 (8th Cir. 1993) ("Neither section 1823(e) nor D'Oench is satisfied by inferences drawn from a bank's records."); Clay v. FDIC, 934 F.2d 69, 72 (5th Cir. 1991) (asserting that "where bank documents only raise an 'inference' of a secret agreement, such an inference is insufficient to support a judgment where the FDIC is one of the parties involved in the bank transfer"). Indeed, this circuit has indicated that suggestive evidence arising from the bank's written records is insufficient to bar the operation of D'Oench. See Castleglen, 984 F.2d at 1578-79. In short, the FDIC has no duty to scour a failed institution's documents for inferences and hidden duties supporting defenses or counterclaims that might prevent the FDIC from collecting the full value of an otherwise facially valid

instrument.

In this case, Noel contends that the written records of Western Gulf contain information upon which he bases his alter ego/breach of fiduciary duty claim. In order for Noel to prevail, we must find a genuine issue of material fact as to whether the records would indicate to a bank examiner that Western Gulf had duties and liabilities arising out of the University Courts' partnership agreement. In his response to FDIC's renewed motion for summary judgment, Noel argued that documents from the permanent loan file show that Western Gulf (1) closed Mile High in 1985; (2) took over the property through in substance foreclosure; (3) did not maintain Mile High's corporate existence; (4) listed the University Court's property in the Board of Directors' minutes and books as real estate owned; and (5) had been advised in an official meeting that Noel may have claims against it. He asserts, "Each of these points may well satisfy the requirements of D'Oench. Each was sufficient to put the regulators on notice of Noel's claims. The totality of the records is sufficient to prevent summary judgment." Appellant's Reply Br. at 15.

However, the logical deductions which a bank examiner would have had to make to conclude that the FDIC could not recover the full value of Noel's facially valid note due to his alter ego/breach of fiduciary duty claim are far from straightforward. The bank examiner would, at a minimum, have to determine that

Western Gulf acted as an alter ego to Mile High and therefore had continuing duties stemming from the University Courts' partnership agreement. The written documentation to which Noel points to advance such a determination is scattered throughout various letters, ledgers, minutes, and other records. In fact, nowhere in the record can we find one written agreement indicating any possibility of Western Gulf's liability under the partnership agreement. The agreement itself does not reference Western Gulf, and Noel points to no document which clearly shows that Western Gulf, through Mile High, had a continuing involvement in University Courts.

The documents to which Noel refers, at best, make only scattered references to University Courts. The "Real Estate Owned" lists and summaries prepared monthly as part of Western Gulf's financial statements indicate that Western Gulf owned University Courts. Other records show the status of the loan to Mile High and Noel. The Board of Directors' minutes from November 13, 1986, indicate that Mile High was inactive, but not dissolved. Minutes from December 15, 1988, indicate that Mile High existed at that time but that it would automatically dissolve at the end of the year if Colorado tax returns were not filed. The minutes also state:

> Mr. Noel is a 50% partner [in University Courts], however we have not heard anything from him in years. Mr. White stated that apparently foreclosure has not occured [sic] previously due to concern that Mr. Noel could have legal causes of action against

[University Courts]. Mr. White went on to state that he was of the opinion that Western Gulf should automatically let Mile High Mortgage dissolve, then Western Gulf could start foreclosure proceedings.

Appellant's App., Vol. II, tab E4. However, none of these records clearly suggest that Mile High was actually dissolved or that Western Gulf acted as an alter ego to Mile High or had an obligation under the University Courts' partnership agreement. Furthermore, we have carefully reviewed the other documents in the record, and find that none would sufficiently put the FDIC on notice that Noel had a breach of fiduciary duty claim against Western Gulf because it acted as an alter ego to Mile High. In any event, the FDIC simply had no duty to ferret out and piece together, from vague, scattered references of various unrelated writings, the information necessary to draw such conclusions. Indeed, even when the documents were neatly presented to us in the record, we had difficulty piecing together a legal theory suggesting that Western Gulf could not recover the full value of Noel's facially valid note because he was entitled to a set-off. Placing an affirmative duty on bank regulators to engage in a similarly tortured analysis runs counter to the purpose of the D'Oench doctrine – to allow examiners to accurately and quickly appraise a bank's assets. Therefore, we hold, as a matter of law, that this scattered evidence is insufficient to prevent the D'Oench doctrine's application. See Allen, 16 F.3d at 575; Clay, 934 F.2d at 72-73.

Finally, Noel asserts that the D'Oench doctrine does not bar his alter

- 18 -

ego/breach of fiduciary duty claim because federal regulators instigated, or at least condoned, Western Gulf's breaches of the partnership agreement. The Federal Savings and Loan Insurance Corporation ("FSLIC") entered into an operating agreement with Western Gulf in February 1985. Shortly after entering the operating agreement, Western Gulf classified the University Court's property as real estate it owned, and it ceased the operations of Mile High, the general partner to University Courts. Noel deduces, "In other words, it appears that the action which constituted a breach of the general partner's duties was taken at the direction of the federal regulatory authority." Supplemental Submission in Opposition to Plaintiff's Renewed Motion for Summary Judgment, at 2. He further argues that an October 8, 1986 letter from Western Gulf to the Federal Home Loan Bank of Dallas shows that Western Gulf acted according to a federal regulator's instructions. That letter touted, as a cost-saving measure, the closure of "the Western Gulf Service Corporation loan origination office in Denver." Appellant's Supp. App. tab 5. Noel claims this obviously references Mile High as it was the only office maintained by Western Gulf in Denver. Finally, at a board meeting during the time Western Gulf operated under the agreement with FSLIC, the board discussed Mile High. The board decided that despite Mile High's present inactivity, it might have a future need for the corporation. Noel acknowledges the board conducted no discussion regarding Mile High's status as

the general partner of University Courts or the fiduciary obligations it may have owed Noel.

Noel thus argues that because Western Gulf entered into an operating agreement with FSLIC and the actions giving rise to Noel's claims occurred while the operating agreement was in effect, we can infer that Western Gulf acted at the behest of federal regulators in allegedly breaching the partnership agreement between Mile High and Noel. Under this theory, summary judgment is inappropriate because "[i]t would be manifestly unjust to allow FDIC to invoke D'Oench to shield itself from the actions of its predecessors in interest." Supplemental Submission in Opposition to Plaintiff's Renewed Motion for Summary Judgment, at 5.

The language of the operating agreement, however, refutes Noel's implication that federal regulators instigated or condoned Western Gulf's alleged breaches of fiduciary duty. It states, "Nothing in this paragraph shall require the Association to breach or abrogate any legally binding written contractual commitments outstanding on or before the effective date of this Agreement." Appellant's Supp. App. tab 5. Noel relies solely on the fact that Western Gulf had entered into this operating agreement with FSLIC to show FSLIC complicity in the alleged breaches. We refuse to impute Western Gulf's actions to FSLIC when the language of its agreement with Western Gulf explicitly states that

Western Gulf should not breach any agreements in an effort to comply with the regulations. Moreover, we cannot impute to FSLIC any responsibility for the closure of Mile High. The cited letter does not obviously reference Mile High. It refers only to a loan origination office in Denver. This is insufficient to put FSLIC on notice that the reference pertained to Mile High. Finally, even though the Western Gulf's board discussed the inactivity of Mile High at a meeting during the period it acted under the FSLIC operating agreement, the board did not mention that it had any continuing liability under the University Courts' partnership agreement. Therefore, even assuming that the FDIC could not assert the D'Oench doctrine if it were instrumentally involved in the actions of the financial institution, we find no evidence here that the FDIC instructed Western Gulf to breach any fiduciary duties that may have been owed to Noel. Hence, Noel's final argument also fails.

Accordingly, we AFFIRM the district court's grant of summary judgment.