**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

TAYLOR S. BLANCHARD,

    Plaintiff - Appellant,

v.

ROBERT LAMPERT, Wyoming
Department of Corrections Director, in his
official capacity; RICK CATRON,
Wyoming Women's Center Warden, in his
official capacity,

    Defendants - Appellees.

No. 18-8020
(D.C. No. 1:17-CV-00124-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES** and **CARSON**, Circuit Judges.[1]
_____

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] While the late Honorable Monroe G. McKay was assigned to, and participated in the oral argument of, this matter before his death on March 28, 2020, his vote was not counted. Yovino v. Rizo, ––– U.S. –––, 139 S. Ct. 706, 710, 203 L.Ed.2d 38 (2019) (federal court may not count the vote of a judge who dies before a decision is issued). "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." United States v. Wiles, 106 F.3d 1516, 1516 n.* (10th Cir. 1997); see also 28 U.S.C. § 46(d) (noting circuit court may adopt procedures permitting disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this Order and Judgment.

The Constitution limits federal judicial power to "Cases" and "Controversies." U.S. Const. art. III, § 2. Once a plaintiff no longer suffers from an actual injury that a court can redress by a favorable decision, her case is moot, and the district court must dismiss it for lack of subject-matter jurisdiction. Today we decide whether the civil action Plaintiff Taylor S. Blanchard filed in the United States District Court for the District of Wyoming became moot upon her release from a Florida boot camp program. In the end, we agree with the district court that, when it dismissed the case as moot, Plaintiff had not presented the court with a redressable claim. Plaintiff's arguments to the contrary are either unpersuasive or unpreserved. Thus, exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 1987, the Wyoming legislature passed the Youthful Offender Act, Wyo. Rev. Stat. § 7-13-1001, et seq., which established a program for first-time criminal offenders under the age of twenty-five. Instead of incarceration at a traditional prison, eligible individuals can attend an intense, six-month "boot camp" program that provides instruction, training, and programming. If an individual successfully completes the program, the sentencing judge may amend the sentence and place the individual on probation. Under the statute, the Wyoming Department of Corrections administers the program.

When the state district court sentenced her, Plaintiff, who is female, was a first-time criminal offender under the age of twenty-five who qualified for the boot camp program. And before she appeared for sentencing, no Wyoming trial judge had

2

ever recommended placement of a female offender in the boot camp program.[2]

Based on her criminal offense, a Wyoming state trial judge sentenced Plaintiff to a lengthy six- to ten-year term of incarceration. But at her request, the state trial judge recommended that Plaintiff enter the boot camp program—a recommendation that could allow Plaintiff, upon successful completion, to serve only a probation sentence.

Although the state trial judge recommended boot camp, the Wyoming Department of Corrections incarcerated Plaintiff in the Wyoming Women's Center in Lusk, Wyoming. Plaintiff filed a grievance asking for the opportunity to participate in boot camp. A prison employee rejected the grievance, stating that classification decisions "are non-grievable."

Plaintiff then filed this lawsuit, alleging Robert Lampert, the Director of the Wyoming Department of Corrections, and Rick Catron, the Warden of the Wyoming Women's Center, violated her right to equal protection by denying her access to the boot camp program based on her sex. In her complaint, Plaintiff asked for "the same opportunity to participate in and complete a Youthful Offender program as men prisoners, either a program operated by the [Wyoming Department of Corrections] in Wyoming or a similar program operated in another state."

One month after Plaintiff filed her complaint and consistent with the relief she sought in her lawsuit, the Wyoming Department of Corrections transferred Plaintiff

---

[2] Although the record is not clear on this point, Plaintiff was perhaps the first female offender to ever request placement in Wyoming's boot camp program.

to a four-month boot camp program for women in Florida—a development Plaintiff described as "much-welcomed."

Shortly after she arrived in Florida, Plaintiff filed her First Amended Complaint. In that pleading, Plaintiff generally alleged that the Florida program was inferior to Wyoming's boot camp program because it provides fewer rehabilitative services and programming than that provided to the men in Wyoming's male-only boot camp.[3] And, even though she originally sought placement "in a similar program operated in another state," Plaintiff moved the goal post in her First Amended Complaint by seeking an injunction prohibiting officials from sending her to another state unless they likewise sent men to out-of-state boot camps.[4] In her words, Plaintiff sought:

> [T]he same opportunity to participate in and complete Wyoming's Youthful Offender program as men prisoners, and to send women to an out-of-state program only if men are sent to out-of-state programs on a comparable and equitable basis, that is, such out-of-state placement should not be based on gender but rather on gender-neutral principles.

After Plaintiff substantially completed the Florida boot camp and her graduation became imminent, Defendants moved to dismiss the First Amended Complaint based on mootness. Defendants argued that Plaintiff's case would become

---

[3] As becomes relevant below, the Florida boot camp was two months shorter than the Wyoming boot camp and allegedly provided no drug treatment to inmates. The First Amended Complaint, however, did not seek redress for these two alleged deficiencies in the Florida program.

[4] Plaintiff's First Amended Complaint purported to be on behalf of a class of plaintiffs, with Plaintiff acting as their class representative. The district court denied Plaintiff's request to certify a class—a decision Plaintiff does not appeal.

4

moot once she graduated from boot camp because she would no longer be a first-time offender and thus would be statutorily ineligible to participate in a boot camp for first-time offenders in Wyoming. As a result, Defendants reasoned that the district court could no longer provide redress for her allegations.

In response to the motion to dismiss, Plaintiff contended that the court should grant her leave to add additional plaintiffs so her case could survive Defendants' mootness challenge.[5] Plaintiff explained that "[t]he purpose of the [Second Amended Complaint] is to add fifteen women as named plaintiffs . . . [who] suffered the identical injury that Ms. Blanchard suffered." Plaintiff conceded that her "Fourteenth Amendment claim was destined to expire upon her graduation from boot camp, a period far too short for that claim to be fully adjudicated in the district court and on appeal." She therefore asked the district court to grant her not-yet-filed motion for leave to file a second amended complaint so she could add parties.

Three days before her boot camp graduation, Plaintiff filed a motion for leave to file a second amended complaint. In that motion, Plaintiff maintained that the Second Amended Complaint sought "merely to add new Plaintiffs to the existing

---

[5] Defendants argued to the district court that the First Amended Complaint did not seek redress for her allegations regarding out-of-state placement or placement into an "inferior" boot camp program. Plaintiff did not dispute that statement in her response to Defendants' motion to dismiss.

5

lawsuit, and does *not* add a new claim."[6]  She argued that she filed her motion in sufficient time to join additional Plaintiffs prior to her case becoming moot.

On January 19, 2018, Plaintiff graduated from boot camp in Florida.  After receiving notice that she successfully completed the Florida boot camp program, the state trial judge modified her lengthy six- to ten-year prison sentence to a five-year term of probation, thus ending Plaintiff's period of boot camp incarceration.

The district court then dismissed Plaintiff's case on mootness grounds and denied Plaintiff's motion for leave to file a second amended complaint.  The district court based its decision on the relief Plaintiff requested in her First Amended Complaint: an injunction ordering Defendants to place her in Wyoming's boot camp program.  Because Plaintiff had served her time and successfully completed a boot camp program, the district court determined that it could no longer grant Plaintiff effective relief.  Plaintiff appealed.

## II.

We begin our analysis by looking to the Constitution.  Without a "Case" or "Controversy," we lack the power to act.  U.S. Const. art. III, § 2.  This "case-or-controversy limitation underpins both standing and mootness jurisprudence."  Rhodes

---

[6] In a reply brief filed the same day the district court dismissed the case as moot, Plaintiff sought to recant her concession in her motion to file a second amended complaint that the case would become moot upon her graduation.  Plaintiff stated: "Admittedly, the brief Ms. Blanchard filed in support of her motion to amend states that her individual claim will likely become moot on January 19, 2018 when Ms. Blanchard graduates from Boot Camp.  That statement was ill-advised and is now recanted."  Plaintiff never tried to recant any such statements or take a different position in response to the motion to dismiss upon which the district court ruled.

v. Judiscak, 676 F.3d 931, 933 (10th Cir. 2012).  When a plaintiff no longer suffers from an actual injury that the district court can redress by a favorable judicial decision, her case becomes moot.  Id.

In her briefing, Plaintiff challenges the district court's conclusion that her graduation rendered her equal protection claim moot.  On appeal, she argues that she did not receive drug treatment in the Florida boot camp unlike males in Wyoming's boot camp.  Plaintiff alleges that her claims are not moot because even after her discharge, the district court could have ordered that Defendants give her two more months of boot camp or place her in drug treatment equivalent to that afforded to male boot camp inmates.  We reject Plaintiff's appellate arguments for the reasons discussed below.

We first address Plaintiff's argument that her claims are not moot because the district court could have ordered Defendants to incarcerate her in boot camp for another two months—a period equivalent to that served by males in Wyoming's boot camp program.  At oral argument, Plaintiff's counsel conceded that she did not seek additional incarceration in boot camp as a remedy in this case.  Thus, we will not disturb the district court's order dismissing her case based on that theory.  United States v. Edgerton, 438 F.3d 1043, 1047 n.3 (10th Cir. 2006) (explaining that we will not reach a conceded argument).

Her second argument meets the same fate, but for a different reason.  On appeal, Plaintiff asserts that her claims are not moot because, after her release, the district court could have granted her partial relief by ordering that Defendants

provide her with drug treatment equivalent to that received by males in Wyoming boot camp. But Plaintiff raises this argument for the first time on appeal. And where "a plaintiff pursues a new legal theory for the first time on appeal, that new theory suffers the distinct disadvantage of starting at least a few paces back from the block." Richison v. Ernest Group, Inc., 634 F.3d 1123, 1127 (10th Cir. 2011). "If the theory was intentionally relinquished or abandoned in the district court, we usually deem it waived and refuse to consider it." Id. "By contrast, if the theory simply wasn't raised before the district court, we usually hold it forfeited." Id.

In her original Complaint, Plaintiff requested the opportunity to participate in a boot camp program in Wyoming "or a similar program operated in another state." But after Defendants provided the relief she sought by sending her to boot camp in Florida, Plaintiff changed theories and filed a First Amended Complaint.[7] In her First Amended Complaint, the operative pleading in this appeal, Plaintiff sought assurance that present and future women prisoners in Wyoming will be able to participate in an in-state boot camp program comparable to the men's program. Plaintiff also generally alleged in one paragraph that Wyoming should only send women to out-of-state programs if men are also sent to out-of-state programs and that the Florida program is inferior to the men's Wyoming program.

---

[7] Although Plaintiff's original complaint sought placement out of state, at oral argument counsel informed the Court that "[a]t the time . . . it never occurred to me that they might respond by sending her to an out-of-state prison."

8

In her First Amended Complaint, Plaintiff specifically requested that the district court:

> Issue preliminary and permanent injunctive relief on behalf of Plaintiff Blanchard and on behalf of the class of women she represents . . . ordering Defendants to immediately take all necessary and proper actions to ensure that present and future women prisoners in the custody of WDOC will be granted the opportunity to participate in an in-state boot camp program comparable to the men's program at Newcastle, or in an out-of-state program provided that placement is gender neutral, that is, men and women are sent to out-of-state programs based on gender-neutral criteria.

But as soon as officials discharged her from Florida boot camp, Plaintiff was no longer a first-time offender, making her ineligible to participate in the boot camp program going forward. And the district court denied class certification, which Plaintiff does not challenge on appeal. She therefore cannot avoid mootness on the ground that she brings suit on behalf of other female plaintiffs.

Now, Plaintiff posits a new theory for the first time on appeal. She argues that a live dispute exists because Defendants could still provide her with drug treatment comparable to the drug treatment men receive in the Wyoming boot camp program. The idea Plaintiff advances, however, stems from a request for new and different relief, not merely a new argument in support of the same relief.

Although Plaintiff's new theory of a partial remedy is more consistent with the facts of the case, she never raised this argument in response to Defendants' motion to dismiss so that the district court could consider it. The only time Plaintiff arguably raised this argument below was in her reply brief on her motion for leave to file a second amended complaint. And not only did Plaintiff raise the argument in a reply

9

brief directed to a motion other than the motion to dismiss being considered on appeal, she also filed it on the same day the district court dismissed the case. We therefore conclude that Plaintiff failed to adequately preserve the issue for appeal.[8] See FDIC v. Noel, 177 F.3d 911, 915-16 (10th Cir. 1999) (concluding that a party may not raise an argument for the first time in a reply brief to the district court because doing so precludes a response by the non-movant and prevents reasoned consideration by the district court).

In fact, Plaintiff's original argument below merely requested that the district court allow her to add additional plaintiffs. Indeed, Plaintiff conceded her case was "destined" to be moot following her release from boot camp in both her response to the motion to dismiss and in her motion for leave to file a second amended complaint. She asserted that to save her lawsuit, the district court needed to add plaintiffs.[9] And it was not until her opening brief in this appeal that Plaintiff

---

[8] Plaintiff's position that the panel should consider her new theories "rest[s] on a misconception of the nature of appellate review." Ball v. United States, No. 19-1161, --- F.3d ---- (10th Cir. July 31, 2020). "The proceedings in district court are not just a rehearsal, a dry run, for the ultimate performance on appeal, where the parties can discard what did not work below and introduce new scenes for a new audience." Id. "We review the case litigated below, not the case fleshed out for the first time on appeal." Id.

[9] Plaintiff makes no allegation and the record contains no evidence that she argued to the state sentencing court that she had to complete boot camp before it could modify her sentence. Nor did she ask that court, or the district court for that matter, to provide her additional incarceration in boot camp or drug treatment equivalent to what men receive in Wyoming. She sought to prevent dismissal in the district court exclusively upon her position that she needed to add additional plaintiffs to prevent her claims from becoming moot. Thus, Plaintiff's failure to

developed the argument that her case still presented a live controversy because Defendants could provide her with equivalent drug treatment.[10] See Campbell v. Ackerman, 903 F.3d 14, 18 (1st Cir. 2018) ("Our jurisprudence simply does not allow a litigant to switch horses in mid-stream").  Plaintiff's failure to raise her new theory appears unintentional and therefore amounts to forfeiture.  But because she raised her argument for the first time on appeal, she cannot "prevail unless [she] can successfully run the gauntlet created by our rigorous plain-error standard of review." United States v. Rosales-Miranda, 755 F.3d 1253, 1258 (10th Cir. 2014).

Plaintiff, however, did not argue for plain error in her brief, even in the alternative.  Rather, she contends we can review her claim de novo because it is a new argument directed to a previously raised issue.  Her argument for de novo review fails, however, as the Court's "long-standing practice has been to review newly raised (but not waived) legal *arguments* under what substantively amounts to (and what we have more recently described as) the plain error standard."  Richison, 634 F.3d at 1128 (emphasis added).  To be sure, "[a]ffording plenary appellate review to

---

make such arguments to the state sentencing court or the district court further demonstrates that her position on appeal is a new one.

[10] Besides being unpreserved, Plaintiff's eleventh-hour argument is problematic for other reasons.  At oral argument, the parties informed the panel for the first time that the Wyoming Department of Corrections is providing Plaintiff with drug treatment.  So Plaintiff's argument, to the extent that it assumes that she never received drug treatment, is admittedly false.  And Plaintiff has never argued that the drug treatment she is now receiving is not equivalent to the drug treatment that males receive in Wyoming's boot camp.

11

newly raised legal theories would do much to undermine this adversarial and appellate order." Id. at 1130.[11]

Plaintiff has not tried to show how her new legal theory satisfies the plain error standard. "And the failure to do so—the failure to argue for plain error and its application on appeal—surely marks the end of the road for an argument for reversal not first presented to the district court." Id. at 1131. In her response to Defendants' motion to dismiss, Plaintiff did not argue that she had a live claim because Defendants afforded her only partial relief. And she did not seek to cure her failure by asking the district court to reconsider its order dismissing her case as moot. She cannot now revisit that decision on appeal without at least satisfying the plain error standard of review, which she has failed to do.

### III.

Ultimately, we agree with the district court's conclusion that it could no longer grant Plaintiff effective relief under the First Amended Complaint. When the district court dismissed her case, Plaintiff had completed her term of incarceration, which

---

[11] Our job is "to correct errors made by the district court in assessing legal theories presented to it, not to serve as a 'second-shot forum.'" Id. (quoting Tele-Communications, Inc. v. C.I.R., 104 F.3d 1229, 1233 (10th Cir. 1997)). Our reluctance "to command do-overs" in the district court explains why we treat arguments for affirming the district court differently than arguments for reversing it. Id. Although "we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal," the same is not true for reversing the district court. Id. "If a newly raised legal theory is entitled to appellate review at all—if it wasn't waived before the district court—it may form a basis for *reversal* only if the appellant can satisfy the plain error standard of review." Id.

caused her to be statutorily ineligible for placement in Wyoming's boot camp program. Thus, the district court could not grant her the relief she sought, which, as prayed for in her First Amended Complaint, necessarily required it to order Defendants to further incarcerate her in a Wyoming boot camp.

The district court's judgment is AFFIRMED.[12]

Entered for the Court

Joel M. Carson III
Circuit Judge

---

[12] Plaintiff moved to supplement the record on appeal to include the deposition of Scott Abbott. We GRANT Plaintiff's motion.

13